# United States District Court
## For The District of Utah, Central Division

STANLEY L. WADE,                         )
                                         )
          Plaintiff,                     )
                                         )
vs.                                      )          Case Nos. 08-CV-641-WFD
                                         )
RANDALL T. GAITHER,                      )
                                         )
          Defendant.                     )

## ORDER DENYING DEFENDANT'S MOTION TO DISMISS AND ADDITIONALLY DENYING PLAINTIFF'S MOTION TO STRIKE AND DEFENDANT'S MOTION FOR SANCTIONS

This matter comes before the Court on Defendant's Motion to Dismiss for failure to state a claim upon which relief can be granted under FED. R. CIV. P. 12(b)(6).  Also before the Court are a motion by Plaintiff requesting that Defendant's Motion to Dismiss reply brief be stricken and a motion by Defendant for sanctions under FED. R. CIV. P. 11. Having considered the parties' motions and memoranda, and having determined that a hearing in the matter would not be beneficial, the Court FINDS and ORDERS:

### I.  Background

Plaintiff Stanley Wade, a non-lawyer, filed his *pro se* complaint in this matter on August 26, 2008, alleging violations of federal RICO, 18 U.S.C. § 1961, *et seq*., Utah's Pattern of Unlawful Activity Act, U.C.A. § 76-10-1601, *et seq*, and common law fraud by

his criminal defense attorney, Randall Gaither.  Defendant Gaither, who is licensed to practice law in Utah, is also proceeding *pro se* in this matter.  Mr. Gaither represented Mr. Wade in a federal tax evasion case (District of Utah Case No. 04-CR-141-TS) from some time in July, 2004, until the summer of 2005 when Wade appealed his conviction to the Tenth Circuit.  It is unclear from the pleadings whether Defendant Gaither represented the Plaintiff at any stage of his appeal or whether he withdrew beforehand.

In his complaint, Mr. Wade alleges that his relationship with Mr. Gaither was to be governed by a fee agreement "providing for a non-refundable retainer in the amount of $25,000, with in-court hours billed against that at $350 per hour [sic] out of court hours billed at $200 per hour, and payment of an expense reserve fee in addition and an additional $25,000."  (Compl. at 4.)   Plaintiff further alleges "three episodes" of extortion on the part of the Defendant.  First, he states that at some point after entering into the fee arrangement, but at a time when only "$16,600 had been expended and there was remaining almost all of the expense reserve and over $30,000 in retainer" Defendant "demanded on threat of withdrawal, while Plaintiff was in great fear of the loss of Defendant's services, another $100,000," which Plaintiff apparently paid. (*Id.* at 4-5.)  Second, "while Plaintiff was in jail and very distraught and fearful, Defendant demanded another $100,000," separate and apart from the first demand for additional funds.  Although Plaintiff allegedly attempted to bargain, the Defendant insisted upon receiving the whole amount, telling Plaintiff "[y]ou're going to buy me a Ferrari." (*Id.* at

5.)  Third and finally, "after Plaintiff had been tried and convicted and sentenced,

Defendant met with him again and used threats and capitalized on Plaintiff's fear,

demanding another $27,500 to handle the appeal," despite Plaintiff's estimate that some

$150,000 remained of the monies he had provided.  (*Id.*)

Plaintiff further alleges that Defendant committed various acts of mail and wire

fraud in violation of 18 U.S.C. §§ 1341 and 1343 and in furtherance of his extortionist

scheme.  Plaintiff's specific allegations assert that Defendant made various telephone

calls and sent documents via U.S. mail and facsimile machines seeking monies from

Don Taylor, the trustee apparently in charge of at least some of Mr. Wade's funds.[1]  (*Id.*

at 6.)

The complaint appears to allege that Plaintiff paid Defendant all but the $27,500

demanded for the purposes of appeal, and that at least $150,000 of the amount paid

cannot be justified by Defendant.  Mr. Wade additionally asserts an interstate nexus by

virtue of Mr. Gaither's use of the monies, for among other things, the general operation

---

[1]  The communications with the trustee and/or the Plaintiff allegedly occurred as follows:
• July 20, 2004: phone call seeking $100,000 for further representation
• October 11, 2004: a letter seeking $100,000 for further representation
• November 11, 2004: phone call seeking money for further representation
  (Plaintiff does not allege the amount)
• November 23, 2004: a letter demanding $100,000 for further representation
• March 23, 2005: a facsimile "regarding fees extorted from Plaintiff on threat"
• July 6, 2005: a facsimile "attempting to extort an additional $27,500" apparently
  for the purposes of appeal
• February 7, 2007: a facsimile "attempting to cover-up the extortion"
(Compl. at 6-7.)

of his law office, including the purchase of supplies which likely traveled in interstate commerce, as well as the purchase of a Porsche Cayenne luxury sport utility vehicle, manufactured in Germany.  (*Id.* at 7.)

## II.  Legal Issues

In his Motion to Dismiss, Defendant Gaither raises four issues,[2] which he asserts require dismissal of the instant action: (1) failure to plead a pattern of racketeering activity insofar as Plaintiff does not plead sufficient factual support for at least two RICO predicate acts and additionally because the alleged predicate acts do not possess sufficient continuity to establish a pattern; (2) failure to plead fraud with sufficient particularity under FED. R. CIV. P. 9(b); (3) Plaintiff's allegations of extortion fail to state a claim upon which relief can be granted, and fail to establish a RICO pattern; and (4) the Court lacks subject matter jurisdiction because the Plaintiff's complaint was filed after the running of RICO's four year statute of limitations.

Plaintiff not only responds to the issues raised by Defendant, but also peremptorily raises and rebuts the issue of whether he has sufficiently pleaded

---

[2]  While Defendant provides citations to the legal authorities on which he bases his motion to dismiss and supporting memoranda, he does so essentially without providing pin cites or otherwise pointing his opponent or the Court to the specific locations of the language he claims supports his position.  The Court has been able to determine the origin of most of the various quoted or referenced sections, and has not noted any major discrepancies in Defendant's characterization of them, however, his practice is not acceptable.  Defendant is strongly encouraged to adhere to either THE BLUEBOOK: A UNIFORM SYSTEM OF CITATION (Columbia Law Review Ass'n et al. eds., 18th ed. 2005) or some other widely used legal citation manual in future submissions to the Court.

Defendant's involvement in a RICO "enterprise" when that enterprise apparently consists of the Defendant's own sole proprietorship law office.  In his reply, Defendant seizes upon the issue and argues that it, too, is dispositive.  Plaintiff subsequently filed a Motion to Strike, arguing that Defendant's use of the "enterprise" argument raises novel issues which were waived when not advanced in Defendant's original Motion to Dismiss.  District of Utah Civil Rule 7-1(b)(3) states that "[r]eply memoranda in support of any motion . . . must be limited to rebuttal of matters raised in the memorandum opposing the motion."  Because Plaintiff raised the "enterprise" issue, the Court cannot say it was untoward for Defendant to discuss the matter in his reply brief, and will address the matter in this order.

### III.  Standard of Review

When considering a complaint in light of a FED. R. CIV. P. 12(b)(6) motion to dismiss for failure to state a claim upon which relief may be granted, the Court must construe all well-pleaded factual allegations in the light most favorable to the non-moving party.  *Moore v. Guthrie*, 438 F.3d 1036, 1039 (10th Cir. 2006).  A complaint need not contain detailed factual allegations, but the allegations must be sufficient to create more than a speculative right to relief.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-557 (2007).  The Court may dismiss a cause of action under Rule 12(b)(6) when it "appears to a certainty that the plaintiff is entitled to no relief under any state of facts which could be proved in support of the claim."  *Moore*, 438 F.3d at 1039

(quotations and citations omitted).

In this case, Plaintiff appears *pro se*, and the Court complies with its requirement to "liberally construe the allegations of a *pro se* complaint."  *Oxendine v. Kaplan*, 241 F.3d 1272, 1275 (10th Cir. 2001).  But while the Court faces additional burdens in the face of a *pro se* complaint, it is not required to adopt the role of advocate for a *pro se* plaintiff.  *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

### IV.  Legal Analysis

RICO allows private parties harmed by racketeering activities to bring civil suits for treble damages. 18 U.S.C. § 1964(c).  To state a RICO claim, a plaintiff must allege that the defendant violated the substantive RICO statute, 18 U.S.C. § 1962, by setting forth "four elements: '(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.' "  *Robbins v. Wilkie*, 300 F.3d 1208, 1210 (10th Cir.2002) (quoting *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985)).  The Court's analysis of these four elements will first determine whether Plaintiff has pleaded sufficient predicate acts of racketeering activity; second, it will address whether his complaint alleges activity meeting the definition of a RICO "pattern of racketeering activity"; third, it will address whether the "enterprise" requirement is met; and finally, it will address Defendant's concerns regarding the statute of limitations.

**A.  Defendant's Alleged RICO Predicate Acts**

**1. Plaintiff's Allegations of Extortion Under 18 U.S.C. § 1951**

18 U.S.C. § 1951(a) prohibits "interference with commerce by threats or violence" and encompasses the common law crimes of robbery and extortion:  "Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion."  Extortion is defined as "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right."  18 U.S.C. § 1951(b)(2).

Plaintiff's claims of extortion essentially allege that the Defendant, formerly Plaintiff's criminal defense attorney, on multiple occasions threatened to withdraw from representing Plaintiff unless additional funds totaling some $227,500 were provided, though at no time were the funds Plaintiff had already deposited with Defendant so depleted as to require an additional influx.  In his motion to dismiss, Defendant neither confirms nor denies his requests for additional funds, instead asserting that he merely warned Plaintiff that he would withdraw for nonpayment of fees if need be.  Construing all well-pleaded factual allegations in Plaintiff's favor, the Court must conclude that Defendant may in fact have unjustifiably demanded additional funds on threat of immediate withdrawal.  However, Defendant asserts that even if he acted as suggested by Plaintiff, his actions cannot be construed as extortionist.

It is certainly true that the instant case does not fit easily within the commonly-held conception of "extortion," which perhaps conjure images of violently extracted "protection money."  As Defendant points out, attempts by some plaintiffs to characterize more mundane actions—indeed, actions involving the legal system—as extortion have failed.  *See, e.g., Deck v. Engineered Laminates*, 349 F.3d 1253 (10th Cir. 2003) (mere abusive litigation is not tantamount to extortion since such a finding would "subject almost any unsuccessful lawsuit to a colorable extortion (and often a RICO) claim.")  However, Plaintiff does not simply allege something akin to arguably abusive litigation, but an attempt to garner unearned payments by unjustifiably threatening to withdraw from the case.  The Court notes as well that there is at least some precedent suggesting, albeit in dicta largely unrelated to § 1951, that an attorney-client fee arrangement could be considered extortionate.  *See Walters v. Nat'l Ass'n of Radiation Survivors,*  473 U.S. 305, 360 (1985) (Stevens, J., dissenting) (discussing fee limitations in veterans claims cases which were "designed to protect the veteran from extortion or improvident bargains with unscrupulous lawyers."); *see also Taylor v. Bemiss*, 110 U.S. 42, 45 (1884)(where it can be shown that a contingent fee arrangement, for example, is obtained "by any undue influence of the attorney over the client, or by any fraud or imposition, or that the compensation is clearly excessive, so as to amount to extortion, the court will in a proper case protect the party aggrieved."); *c.f. Stack v. Mason & Assoc.*, 245 Fed. Appx. 920, 923-24; 2007 WL 2415177, at *2 (11th

Cir. 2007) (affirming district court's dismissal of a RICO suit alleging extortion by plaintiff's former defense attorneys due to "unreasonably high costs and fees" because a state court had already reviewed the fees charged and found them reasonable).

In considering the factual allegations at issue here, the Court cannot say that it "appears to a certainty that the plaintiff is entitled to no relief under any state of facts which could be proved in support of the claim." *Moore*, 438 F.3d at 1039. Rather, if the evidence in this case ultimately suggests that Defendant Gaither repeatedly and unjustifiably required large additional sums of money to continue his representation of Plaintiff Wade as the complaint suggests, particularly on the eve of trial, or within the ten day window for direct appeal, a reasonable jury could find that such actions constituted extortion under 18 U.S.C. § 1951.[3]

_____

[3] Although the Defendant did not raise the issue, 18 U.S.C. § 1951, also known as the Hobbs Act, does require an interstate commerce nexus. To violate the section one must "*in any way or degree* obstruct, delay or affect[ ] commerce." 18 U.S.C. § 1951(a). Courts have long interpreted "in any way or degree" to imply that Congress intended to regulate extortionate activities to the limit of its Commerce Clause powers. *See United States v. Haskins,* 737 F.2d 844, 848 -849 (10th Cir. 1984). As a result, only a *de minimis* effect on interstate commerce is required to sustain federal jurisdiction. *Id., see also United States v. Smith*, 413 F.3d 1253, 1274 (10th Cir. 2003). *Smith* cites cases from the First, Second, Sixth and Ninth Circuits confirming that even in light of the Supreme Court's watershed decisions in *United States v. Lopez*, 514 U.S. 549 (1995) (overturning the Gun-Free School Zones Act of 1990 for lack of a *substantial* interstate commerce connection) and *United States v. Morrison*, 529 U.S. 598 (2000) (overturning a portion of the Violence Against Women Act of 1994 for the same reason), the *de minimis* effect required on the face of the Hobbs Act is still valid. The Tenth Circuit has further stated that the *de minimis* effect requirement is met by the regular purchase of goods that have moved in interstate commerce. *Haskins*, 737 F.2d at 849. In this case, the Court is satisfied that Defendant engaged in interstate commerce to a sufficient degree to sustain this Court's jurisdiction. For example, Plaintiff asserts that at a minimum Defendant purchased a German luxury vehicle using proceeds from his allegedly extortionate activities, and it goes without saying that the daily operation of his law practice required the purchase of goods that

**2.  Plaintiff's Allegations of Fraud and the Requirements of Fed. R. Civ. P. 9(b)**

Plaintiff also pleads various acts of mail and wire fraud under 18 U.S.C. §§ 1341 and 1342 respectively as RICO predicates under 18 U.S.C. § 1961(1), as well as common law fraud under Utah state law.  In order to establish a claim of mail fraud, Plaintiff must allege "(1) the existence of a scheme or artifice to defraud or obtain money or property by false pretenses, representations or promises, and (2) use of the United States mails for the purpose of executing the scheme."  *Bacchus Indus., Inc. v. Arvin Indus., Inc.,* 939 F.2d 887, 892 (10th Cir. 1991).  Since the federal mail system is established under Congress's Postal Power found in Article I, Section 8, Clause 7 of the U.S. Constitution, no interstate nexus is required; the use of the federal mail system is by itself sufficient to establish federal courts' jurisdiction.  *See O'Rourke v. City of Norman*, 875 F.2d 1465, 1469-70 (10th Cir. 1989).  "The elements of wire fraud are very similar, *but require that the defendant use interstate wire, radio, or television communications* in furtherance of the scheme to defraud."  *BancOklahoma Mort. Corp. v. Capital Title Co.*, 194 F.3d 1089, 1102 (10th Cir. 1999) (citations and quotations omitted; emphasis added).

Notwithstanding the unique aspects of mail and wire fraud, the underlying requirements for each crime are no different than for common law fraud.  *Tal v. Hogan*,

---

traveled in interstate commerce.

453 F.3d 1244, 1263 (10th Cir. 2006) (quoting *BancOklahoma*, 194 F.3d at 1102).

"Actionable fraud consists of (1) a representation; (2) that is false; (3) that is material;

(4) the speaker's knowledge of its falsity or ignorance of its truth; (5) the speaker's intent

it be acted on; (6) the hearer's ignorance of the falsity of the representation; (7) the

hearer's reliance; (8) the hearer's right to rely on it; and (9) injury." *BancOklahoma*, 194

F.3d at 1103.

The particularity requirements found in Fed. R. Civ. P. 9(b) do apply to claims of

mail and wire fraud under RICO. *Andrews v. Heaton*, 483 F.3d 1070, 1076 (10th Cir.

2007)*; Tal*, 453 F.3d at 1263. Indeed, the need to plead fraud with particularity is

especially crucial given the "threat of treble damages and injury to reputation which

attend RICO actions" and even more so where the federal RICO claims provide the only

link to a federal court's jurisdiction. *Cayman Explor. Corp v. United Gas Pipe Line Co.*,

873 F.2d 1357, 1362 (10th Cir. 1989). Thus, "a complaint alleging fraud [must] 'set forth

the time, place and contents of the false representation, the identity of the party making

the false statements and the consequences thereof.'" *Koch v. Koch Indus.*, 203 F.3d

1202, 1236 (10th Cir.2000) (quoting *Lawrence Nat'l Bank v. Edmonds*, 924 F.2d 176,

180 (10th Cir.1991)). A plaintiff asserting "fraud must also identify the purpose of the

mailing within the defendant's fraudulent scheme." *McLaughlin v. Anderson*, 962 F.2d

187, 191 (2d Cir.1992).

It is apparent that Plaintiff's allegations of mail and wire fraud do not meet the

requirements of Rule 9(b).  All that is clear, in fact, is that Defendant allegedly made multiple unjustified demands for additional funds from Plaintiff and his trustee. Importantly, the complaint does not allege the effect on the listener by indicating that Plaintiff or his trustee believed the monies were actually owed.  Furthermore, it appears that the same communications form the basis for Mr. Wade's fraud claims and his extortion claims.  It would seem the elements of fraud and the elements of extortion are mutually exclusive; fraud relies upon a perpetrator fooling the unwitting victim with a false statement, whereas extortion relies upon the perpetrator inducing the victim's compliance by violence or fear.

In his complaint, Plaintiff states that the first demand for an additional $100,000 induced "fear" and constituted extortion (Compl. at 4.), but he contradicts himself in his in his response to Defendant's Motion to Dismiss, Plaintiff asserts that the first demand did not induce fear, but instead constituted fraud under Utah state law.  The Court is left wondering whether Plaintiff is alleging he was tricked into paying additional monies because he believed he actually owed the Defendant, or if he paid because he was afraid Defendant would withdraw as his counsel regardless of whether Plaintiff actually owed additional funds.  Additionally, as Defendant points out, at least one of the allegedly fraudulent mailings in this case consisted of Defendant's reply to a Utah State Bar Association inquiry into his billings to Plaintiff.  Yet Plaintiff asserts that Defendant's response supports the view that Plaintiff did not owe additional monies at the time of the

second $100,000 demand.  If that is the case, the Court cannot fathom how the correspondence was false; Plaintiff does not appear to allege that Defendant mislead the Bar Association regarding how much was owed, how much was demanded, or how much was paid.

Finally, Plaintiff does not allege the location where the Defendant's supposedly fraudulent telephone and facsimile communications were made from, nor where they were made to.  Although the Court finds it highly likely that the communications originated at Defendant's Salt Lake City law office, it is uncertain where Plaintiff's trustee, Don Taylor, would have received the calls.  This information is particularly crucial in the context of allegations of wire fraud, given the potentially dispositive interstate nexus requirement.

Mindful as the Court is of its duty to construe Plaintiff's *pro se* pleadings liberally, it must agree with the Defendant that the complaint does not "give the defendant, and the trial court, clear notice of the factual basis of the predicate acts," *Cayman*, 873 F.2d at 1362, or at least those based in mail and wire fraud.  The Court, however, does have the discretion to allow plaintiffs to amend their pleadings if the circumstances so warrant.  *Id.* at 1362-63.  The Federal Rules of Civil Procedure make clear that "leave [to amend] shall be freely given when justice so requires."  FED. R. CIV. P. 15(a).  Of prime concern in evaluating whether or not to allow amendment of a complaint is the potential for prejudice to the defendant.  *See Minter v. Prime Equip. Co.*, 451 F.3d 1196,

-13-

1207-08 (10th Cir. 2006).  Courts typically find prejudice only where the amendment

would unfairly affect the defendant's preparation of his defense.  *Id.* at 1208.  Such

prejudice is rare where amendment occurs well in advance of trial or where the

defendant already generally has notice of the claims and amendment merely corrects

deficiencies rather than adds wholly new claims or factual circumstances.  *See Id.*

(citing numerous Tenth Circuit cases).

      In this case, a trial date has not been set, discovery has not been conducted, and

indeed, Defendant has not yet filed an answer.  An amended complaint will serve only

to clarify the circumstances surrounding the alleged fraud, so that the particularity

requirements of Rule 9(b) are met.  Thus, no prejudice to the Defendant will occur, and

leave to amend should be and is granted so that Plaintiff is "not prevented from

pursuing a valid claim."  *Id.*  Plaintiff's amended complaint should elucidate the time,

place, contents, and effect on the recipient of each of the allegedly fraudulent

communications so as to provide the Defendant and the Court with adequate notice of

the claims at issue.

**B.  Does Plaintiff's Complaint Set Forth A Pattern of Racketeering Activity Consisting of at Least Two Predicate Acts Under 18 U.S.C. § 1961?**

      Plaintiff bases his RICO pattern of racketeering cause of action on underlying

allegations that Defendant committed multiple instances each of extortion under § 18

U.S.C. § 1951; mail fraud under 18 U.S.C. § 1341; and wire fraud under 18 U.S.C. §

-14-

1343.  In order to state a pattern of racketeering activity claim under 18 U.S.C. §

1961(5) and survive a motion to dismiss under FED. R. CIV. P. 12(b)(6), Plaintiff must

initially allege facts sufficient to support at least two predicate acts.  Extortion, mail

fraud, and wire fraud all constitute § 1961 RICO predicates.  Merely pleading two

predicate acts, however, will not support a finding that a pattern of racketeering activity

exists.

Rather, Plaintiff must also demonstrate "that the racketeering predicates are

related, *and* that they amount to or pose a threat of continued criminal activity," *H.J. Inc.*

*v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 240 (1989) (emphasis in original), or

"continuity over a closed period by proving a series of related predicates extending over

a substantial period of time," *id* at 242.  A series of predicate acts which extend over a

few weeks or months do not establish "closed-ended" continuity.  *Id.* at 242.  In

*Resolution Trust Corp. v. Stone*, the Tenth Circuit found that where a jury could infer

that a racketeering scheme lasted "from seven to eight months to perhaps as many as

eighteen months" the scheme was of sufficient duration to satisfy RICO's closed-ended

continuity requirement.  *Resolution Trust Corp. v. Stone*, 998 F.2d 1534, 1544 (10th Cir.

1993).  Similarly, the Ninth Circuit has observed that in no case has the closed-ended

continuity requirement been satisfied by a pattern of activity lasting less than a year.

*Allwaste*, 65 F.3d at 1528 (finding the closed-ended requirement met where the

predicate acts occurred over as much as thirteen months, but explicitly refusing to

create a bright line, one-year requirement).

In this case, Plaintiff's allegations of mail and wire fraud revolve around telephone, facsimile, and regular mail communications detailed in footnote one, above, which began sometime in July 2004 and culminated in February 2007 with the transmission of a letter Plaintiff asserts was fraudulently intended to prevent or delay him from taking action.  Plaintiff's allegations of extortion focus on demands for additional money beginning soon after Mr. Gaither was retained as counsel in July 2004, and ending in July 2005 when additional monies were demanded for the purposes of appeal.  At a minimum, Plaintiff's complaint can be construed to plead at least two to three instances of extortion over a period of nearly twelve full months,[4] which is sufficient to establish a closed-ended pattern of racketeering activity and to allow this case to proceed.  *See Resolution Trust Corp.*,  998 F.2d at 1544.  If after amendment Plaintiff's complaint succeeds in stating claims of mail or wire fraud upon which relief might be granted, the complaint could be construed to allege a nearly nineteen month pattern of racketeering activity, which would be sufficient under any definition of closed-ended continuity.

---

[4]  The Court notes again that the complaint indicates that Defendant's alleged demand for additional money in July, 2004, constituted extortion, but that Plaintiff's memorandum in response to the motion to dismiss contradicts this assertion.  Notwithstanding the discrepancy regarding the July, 2004 demand, Plaintiff alleges at least two other instances—in October, 2004 and July, 2005—of demands for additional money that could be considered extortion under 18 U.S.C. § 1951.

**D.  Defendant's Alleged Participation in a RICO Enterprise Consisting of His Own
   Sole Proprietorship?**

Participation in an overarching "enterprise" is the final element of a RICO pattern

of racketeering activity case which a plaintiff must satisfy in order to state a claim under

§§ 1964(c) and 1962(d).  *Robbins*, 300 F.3d at 1210.  RICO makes it "unlawful for any

person employed by or associated with any enterprise . . . to conduct . . . or participate .

. . in the conduct of such enterprise's affairs through a pattern of racketeering.  18

U.S.C. § 1962(c).  To establish liability under § 1962(c), "one must allege and prove the

existence of two distinct entities: (1) a 'person'; and (2) an 'enterprise' that is not simply

the 'person' referred to by a different name."  *Cedric Kushner Promotions, Ltd. v. King*,

533 U.S. 158, 162 (2001).

In *Cedric Kushner*, the Supreme Court found that "no more than the formal legal

distinction between 'person' and 'enterprise'" is required.  *Id.* at 165 (finding the "distinct

entity" requirement met where a wholly-owned corporation and its sole shareholder

served as the "enterprise" and "person" respectively).  Similarly, in an opinion by Judge

Richard Posner, the Seventh Circuit has stated that "a sole proprietorship can be an

'enterprise' with which the proprietor can be 'associated.'" *McCullough v. Suter*, 757

F.2d 142, 143 (7th Cir. 1985) (cited with approval in *Cedric Kushner*, 533 U.S. at 163).

The *McCullough* Court reasoned that a business entity or other organization—even one owned and managed by a single person—can constitute "a

group of individuals associated in fact" or an enterprise, so long as "it has *any*

-17-

employees." *Id.* (emphasis added).   "[I]t would be passing strange to exclude proprietorships," though the Court admitted "[t]here would be a problem if the sole proprietorship were strictly a one-man show" since an individual cannot associate with himself. *Id.* at 144.  The *McCullough* Court further stated:

> A one-man band that does not incorporate, that merely operates as a proprietorship, gains no legal protections from the form in which it has chosen to do business; the man and the proprietorship really are the same entity in law and fact. But if the man has employees or associates, the enterprise is distinct from him, and it then makes no difference, so far as we can see, what legal form the enterprise takes. The only important thing is that it be either formally (as when there is incorporation) or practically (as when there are other people besides the proprietor working in the organization) separable from the individual.

*Id.* Since the sole proprietor in *McCullough* had "several people working for him; this made his company an enterprise, and not just a one-man band; and all section 1962(c) requires . . . is some separate and distinct existence for the person [ ] and the enterprise."

The entirety of the circuit courts of appeal that have addressed the issue have followed the Seventh Circuit's opinion in *McCullough. See e.g., City of New York v. Smokes-Spirits.com, Inc.*, 541 F.3d 425, 448 (2d Cir. 2008) (citing *McCullough* and vacating a dismissal of RICO charges where the plaintiff "alleged that [the defendant's] sole proprietorship is not a one-man show."); *Jaguar Cars v. Royal Oaks Motor Car Co.*, 46 F.3d 258, 268-69 (3d Cir. 1995) (adopting *McCullough*); *Guidry v. Bank of LaPlace*, 954 F.2d 278, 283 (5th Cir. 1992) (adopting the *McCullough* rule and dismissing RICO

claims where plaintiff did not allege that the defendant sole proprietor had any
assistance in his fraudulent scheme); *United States v. Benny*, 786 F.2d 1410, 1415-16
(9th Cir. 1986) (rejecting defendant sole proprietor's argument that the approach in
*McCullough* was tautological, and finding that since the sole proprietor enlisted the help
of four other individuals, his enterprise was a "troupe, not a one-man show."). 
Furthermore, *McCullough's* logic has been adopted by various state racketeering laws,
including Utah's.  *See* Utah Code Ann. § 76-10-1602(1) (1999); *see also State of Utah
v. Bradshaw*, 99 P.3d 359, 367 (Ut. 2004).

        The Tenth Circuit has not yet decided the issue explicitly, though it has
addressed similar matters.  In *AD-X Int'l, Inc. V. Kolbjornsen*, 97 Fed. Appx. 263, 266
(10th Cir. 2004), however, the Court found that a bankruptcy estate and the estate's
debtor should be considered legally distinct, and could constitute a RICO enterprise and
person respectively.  The *AD-X* Court emphasized that "In addition to individuals
associated in fact, *any legal entity* may qualify as a RICO enterprise."  *Id.; but c.f.
Brannon v. Boatmen's First Nat'l Bank*, 153 F.3d 1144, 1147-48 (10th Cir. 1998).  In
*Brannon*, the Tenth Circuit refused to adopt a rule "that a mere allegation that the RICO
'person' is the subsidiary conducting the affairs of the parent is sufficient to state a claim
under § 1962(c)."  The *Brannon* Court concluded that "in order to state a viable claim
under § 1962(c) against a corporation for conducting the affairs of its parent corporation,
a plaintiff must, at the very least, allege the parent 'somehow made it easier to commit

-19-

or conceal the fraud of which the plaintiff complains.'" *Brannon*, 153 F.3d at 1147

(quoting *Emery v. American Gen. Fin., Inc.*, 134 F.3d 1321, 1324 (7th Cir. 1997)).

      The logic of *Brannon* arguably has some applicability to *McCullough*'s theory of

the sole proprietorship enterprise.  The majority of cases involving the *McCullough* rule

admittedly involve sole proprietorships with multiple employees or associates who

clearly played an active role in the conduct of racketeering activities.  The Court has

found no case where a sole proprietorship with but a single other employee—be it a

legal associate or a secretary—who was not alleged to play at least some role in the

racketeering activity constituted an enterprise under § 1962(c).

      In this case, Plaintiff alleges in his complaint that "Defendant operates his law

practice as either a sole proprietorship or through a professional corporation or LLP,

and that such criminal conduct alleged herein was perpetrated in association with this

'enterprise.'"  (Compl. at 4.)  Plaintiff's complaint indicates that Defendant may, at one

point in the course of representing Mr. Wade, have been associated with another

attorney and may have collected fees on his behalf, though Plaintiff additionally states

that he possesses no evidence that Mr. Gaither having passed any revenue from Wade

to any associates.  (Compl. at 4-5.)  Thus it appears plausible that  Defendant could be

said to have been conducting the affairs of a larger "associated-in-fact" RICO

enterprise.[5]  It may ultimately be said that the overarching enterprise in this case made

it possible for the Defendant to conduct racketeering activities as required in *Brannon*,

though the Court possesses little or no evidence with which to conclude that such is the

case.  Even if *Brannon* applies, given the extremely deferential standard of review

appropriate when reviewing a motion under Rule 12(b)(6), the Court cannot say at this

stage of the proceeding that there is no set of factual circumstances that Plaintiff might

prove under which a jury could find that the Defendant was a part of a RICO enterprise.

## E.  RICO's Four Year Statute of Limitations

RICO does not explicitly set forth a statute of limitations for actions brought under

its civil enforcement provision, 18 U.S.C. § 1964(c).  *Agency Holding Corp. v. Malley-*

*Duff & Assoc.*, 483 U.S. 143, 146 (1987).  However, the Supreme Court has concluded

that the Clayton Act, 15 U.S.C. § 15, which allows individuals injured by antitrust

violations to bring suit seeking treble damages, provides a suitably close analogy upon

which to base a statute of limitations for RICO.  *Id.* at 150.  The Clayton Act provides a

four year statute of limitations, which begins to run at the time when a cause of action

under the statute first accrues.  15 U.S.C. § 15(b).  "'[A] civil RICO cause of action

---

[5] Plaintiff's response memorandum additionally asserts that Defendant employees at least one secretary in the operation of his sole proprietorship law firm, and that the secretary attempted on more than one occasion to prevent service of Mr. Wade's complaint.  (Pl.'s Memo in Response at 17.)  The Court need not rely on this extraneous fact in its Rule 12(b)(6) analysis, however, as the face of the complaint sufficiently alleges that Mr. Gaither was not simply a "one-man band."

begins to accrue as soon as the plaintiff discovers, or reasonably should have discovered, both the existence and the source of his injury *and that the injury is part of a pattern*.'" *Bath v. Bushkin, Gaims, Gaines and Jonas*, 913 F.2d 817, 820 (10th Cir. 1990) (quoting *Bivens Gardens Office Bldg. v. Barnett Bank*, 906 F.2d 1546, 1553 n.2 (11th Cir. 1990)).  *Bath* makes clear that "[t]his rule recognizes that a civil RICO plaintiff must allege not only injury, but also that the injury is part of a pattern of racketeering activity."  *Id.* at 820-21.

The instant complaint puts the first demand for additional money in mid-July, 2008, more than four years prior to the August 2008 filing of the complaint.  However, in his response to the motion to dismiss, Plaintiff asserts that because his criminal trial was not yet imminent, the initial demand did not induce fear as required by 18 U.S.C. § 1951, and cannot be considered extortion.[6]  Instead, Plaintiff states that the first demand for money constitutes fraud under Utah law, apparently because Plaintiff actually believed additional money was owed, and paid it.  (Pl.'s Memo in Response at 15.)  He asserts that it wasn't until the second demand for $100,000 in October, 2004, "when it was obvious [Defendant] hadn't began [sic] to earn the $150,000 already paid that the extortion was recognized and the RICO violation began."  (*Id.*)

Whether Defendant's alleged first demand for additional money from Plaintiff

---

[6]  This stands in stark contrast to Plaintiff's assertions in the complaint that the first demand for an additional $100,000 came at a time when "Plaintiff was in jail and in great fear of the loss of Defendant's services."  (Compl. at 4.)

constitutes extortion, fraud under state law, or mail fraud under federal law (the complaint also alleges that Defendant mailed requests for additional money in July 2004) is of no consequence.  Even if the actions constituted a predicate act under RICO, a pattern of racketeering activity is not established by a single event.  Rather, at least two predicate acts must occur, and the second relevant event in the instant complaint did not occur until at least October, 2004, less than four years prior to the filing of the instant complaint, and within the statute of limitations adopted by the Supreme Court in *Agency Holding Corp.*

### V.  Conclusion

For the foregoing reasons, Defendant's Motion to Dismiss is DENIED.  However, the Court also finds that allegations of mail, wire, and common law fraud contained in the complaint fail to satisfy the pleading requirements of Fed. R. Civ. P. 9(b).  Rather than dismiss potentially legitimate claims, leave to amend is GRANTED.  Plaintiff shall have twenty-five days from the filing of this order to file an amended complaint, which clearly states claims of fraud upon which relief can be based.  Special attention should be paid to setting forth "the time, place, and contents of the false representation, the identity of the party making the false statements, and the consequences thereof."  *Koch*, 203 F.3d at 1236.  Defendant's obligation to answer the complaint is hereby tolled until Plaintiff's amended complaint is filed.

Plaintiff additionally filed a Motion to Strike, which is aimed at Defendant's Motion

to Dismiss reply brief.  As discussed in Section II, above, Plaintiff raised multiple issues in his response brief which Defendant rightfully responded to under Local Rule 7-1(b)(3).  Plaintiff's Motion to Strike is accordingly DENIED.

Finally, Defendant seeks sanctions on the basis that Plaintiff's complaint is baseless.  Given the Court's instant ruling on Defendant's Motion to Dismiss, it is clear that Rule 11 sanctions are inappropriate, and Defendant's motion is therefore DENIED.

Dated this 2nd day of March, 2009.

_____
Honorable William F. Downes
United States District Judge
Sitting by Special Designation