# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
## NORTHERN DIVISION

| | |
|---|---|
| STANLEY L. WADE, <br><br> Plaintiff(s), <br><br> vs. <br><br> RANDALL T. GAITHER, <br><br> Defendant(s). | **ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** <br><br> Case No. 08-CV-641-WFD-DN <br><br> Judge William F. Downes |

This matter comes before the Court on cross-motions for summary judgment pursuant to FED. R. CIV. P. 56(a). (Doc. 87, 114.) Also before the Court are a number of other motions, all of which are now moot.[1] Having considered the parties briefs and relevant exhibits, and having determined that oral argument is unnecessary, the Court hereby FINDS and ORDERS as follows:

## BACKGROUND

Plaintiff Stanley L. Wade hired Defendant Randall T. Gaither in July, 2004 to defend him against the United States in a criminal tax evasion case. The attorney-client relationship was governed by two fee agreements, the first of which retained Gaither for all pre-trial motions

---

[1] Specifically, the following motions filed by Wade are moot: Motion to Exclude Opinion/Affidavit of Gregory G. Skordas (Doc. 103), Motion to Strike Documents Allegedly Filed on April 26, and "Corrected" Copy of Defendant's Affidavit (Doc. 111), Motion for Enlargement of Time to File Response to Defendant's Motion to File Supplementary Papers (Doc. 172), Motion for Enlargement of Time to Provide Pretrial Disclosures under Rule 26(a)(3) (Doc. 174), and Motion to Limit Number of Witnesses and Evidence to be Presented by Defendant (Doc. 183). Similarly, the following motions filed by Gaither are now moot: Motion to Strike Mathison Affidavit (Doc. 147), Motion for Leave to File Supplemental Papers in Support of Defendant's Motion for Summary Judgment (Doc. 165), and Motion for Change of Date of Final Pre-Trial Conference (Doc. 179).

The Court relied on none of the disputed documents, exhibits or affidavits. Moreover, many of the documents are simply insufficient on their face or irrelevant. Take, for example, the Mathison and Skordas affidavits. Mathison is a jailhouse acquaintance of Wade and his opinion as to whether Gaither earned his fees has no place here. And Skordas's affidavit, which focuses on the propriety of Gaither's billing practices, is simply irrelevant to the determination of whether Gaither's communications with Wade were false or extortive.

practice and required Wade to pay a $50,000 retainer, some of which was non-refundable. The second fee agreement, signed just over a month before trial, provided that Gaither would continue to represent Wade through sentencing in exchange for a one-time, non-refundable, $100,000 fee. Apart from the fees required by these two agreements, Wade paid Gaither an additional $89,000 to $114,000.[2]

Here, Wade argues that most or all of the payments made to Gaither, other than the original retainer, were the product of fraud and coercion. According to Wade, Gaither demanded these monies after realizing Wade had the means to post a $2,000,000 cash bond. Wade asserts that Gaither made false representations regarding his need for additional funds and extorted the money by threatening to withdraw.

Specifically, Wade maintains that Gaither carried out his scheme through four false letters and a series of face-to-face meetings. The first three letters proposed fee agreements that would cover Gaither's representation of Wade at trial and on appeal. According to Wade, Gaither overcharged him for pretrial motions practice and therefore the letters' implication that Gaither needed additional funds for trial or appeal must have been false. Wade also claims that Gaither threatened to withdraw if he was not paid, knowing that Wade's fear of being left unrepresented would motivate him to pay. The evidentiary linchpin of Wade's claim he was overcharged are a series of billing statements Gaither sent in his fourth letter, to the Utah State Bar and Wade.

---

[2] The exact amount is in dispute, but is not material because it is irrelevant to the key issue, which is whether the payments might reasonably have been induced by a pattern of ongoing fraud and extortion. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

These statements–which are incomplete seem to have been prepared after the fact–arguably suggest that Gaither collected for work he did not bill.[3]

Against this backdrop, Wade brings three claims: (1) violation of the civil RICO statutes, 18 U.S.C. § 161, *et seq.*, arising from Gaither's scheme to extort and defraud Wade over the duration of their relationship; (2) similar violations of Utah's Pattern of Unlawful Activity Act, U.C.A. §§ 76-10-1601, *et seq.*; and (3) common law fraud.

## LEGAL STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The moving party bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record which it believes demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In response, the non-moving party must go beyond the pleadings and come forward with specific, admissible evidence showing there is a genuine issue for trial. *Id.* at 324.

Although a court must draw all reasonable inferences in favor of the non-moving party, *Pinkerton v. Colorado Dept. of Transp.*, 563 F.3d 1052, 158 (10th Cir. 2009), the simple existence of a factual dispute is not enough to bar summary judgment, *Anderson v. Liberty Lobby*, 477 U.S. 242, 254 (1986). The fact must be material and the dispute must be genuine. *Id.* To be material, the fact must be capable of affecting the substantive outcome; to be genuine, the dispute must be backed by enough evidence that a reasonable jury could find for the non-moving party. *Id.*

---

[3] The statements provided by the parties are incomplete and disorganized. What is quite clear, however, is that Gaither's billing and record keeping practices are irregular.

3

Because Wade appears *pro se*, the Court liberally construes his allegations and arguments. *Oxendine v. Kaplan*, 241 F.3d 1272, 1275 (10th Cir. 2001).

**DISCUSSION**

*I. Racketeering Influenced and Corrupt Organizations*

The RICO statutes allow "[a]ny person injured in his business or property" by racketeering activities to bring civil suits for treble damages. 18 U.S.C. § 1964(c). To successfully state a RICO claim, a plaintiff must allege: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Hall v. Witteman*, 584 F.3d 859, 867 (10th Cir. 2009).

A "pattern of racketeering activity" is at least two acts of racketeering activity that occurred within a ten-year period, 18 U.S.C. § 1961(5), that amounted to, or constitute a threat of, *continuing* racketeering activity. *Bacchus Industries, Inc. v. Arvin Industries, Inc.*, 939 F.2d 887, 891 (10th Cir. 1991). Wade alleges two racketeering predicates—mail fraud and extortion.[4] *See* 18 U.S.C. § 1961(1)(B).

*A. Mail Fraud*

To establish the existence of mail fraud, Wade must show that Gaither devised a scheme or artifice by which to commit common law fraud, and that he executed this scheme through the United States mails. *Bacchus*, 939 F.2d at 892. Actionable fraud consists of an intentional, material misrepresentation or falsity made with the understanding that the listener would act in

---

[4] When the Court denied Gaither's motion to dismiss it analyzed a third predicate racketeering activity – wire fraud. Though Wade does allege that Gaither transmitted one letter via facsimile, it appears that the fax never reached Wade and Gaither followed up with a traditional letter. Even if Wade's Amended Complaint is construed liberally, it does not allege wire fraud.

4

reasonable reliance upon the statement's apparent truth. *BancOklahoma Mort. Corp. v. Capital Title Co.*, 194 F.3d 1098, 1102 (10th Cir. 1999) (listing elements). Wade's claims turn on whether Gaither's letters contain a material misrepresentation or falsity.[5]

Here, Wade claims that the October 11 letter falsely stated, "I [Gaither] have not been retained to represent you beyond filing and presenting pretrial motions to the Court." (Def.'s Mem. in Supp. Ex. 18.) Similarly, the November 23, 2004, letter is alleged to have falsely stated, "In order to proceed and prepare for trial a non-refundable trial fee in the amount of $100,000.00 [sic]." (Def.'s Mem. in Supp. Ex. 21.) According to Wade, these statements were "false" because Gaither "had already been paid more than $100,000 in excess of what he had earned by his own admission in the statements provided on February 22, 2007, under direction of the Utah State Bar." (Am. Compl. 15.)

---

[5] The body of the October 11 letter reads:

> This letter will confirm our recent conversations concerning my continued representations in your case. In this matter when [sic] first retained it was agreed that on or about October 1, 2004 there would be a full assessment of the case involving experts, accountants and other persons with specialized knowledge to assist in the evaluation of the defense and to serve as possible witnesses. As of October 1, 2004 no action had been taken except for limited review by a forensic accountant which I had retained but discharged based upon your comments to Robert Alan Jones concerning other experts. On your behalf I have filed the pretrial motion which are [sic] based upon the Indictment and legal review of the Indictment. However, as I have discussed with you on October 1, 2004 I have not been retained to represent you beyond filing and presenting the pretrial motions to the Court. Further, I have agreed to continue as your attorney pending the retention and obtaining of potential witnesses and experts concerning your potential defense. Assuming sufficient experts are retained I will be happy to discuss a retainer to continue to represent you after pretrial motions to a probable trial.

The body of the November 23 letter:

> This letter will confirm that the trial is still scheduled for January 5, 2005. In order to proceed and prepare for trial a non-refundable trial fee in the amount of $100,000 [sic]. See the enclosed plea [sic] agreement. Please make arrangements to have that attorney fee paid. This amount does not include any appeal to the Tenth Circuit Court of Appeals. Further you will need to make separate arrangements with the Office of Robert Alan Jones if you elect to continue to have him as your attorney after December 1, 2004.

(Doc. 96, Def.'s Mem. in Opp'n., Ex. 17, 19.)

The letters, however, are most naturally read as reminding Wade that the original fee agreement did not cover trial and expressing Gaither's unwillingness to proceed without first negotiating the jury trial fee, as required by the original fee agreement (not, as Wade implies, that Gaither *needed* additional funds to adequately prepare for trial). The plain language of the first fee agreement bears this out. It explicitly provides that the original retainer did not cover trial and that a jury trial fee would be "negotiated in the future based on the length and complexity of trial, if any." (Def.'s Mem. in Supp. Ex. 14.) Indeed, even Wade acknowledges that the letters accurately represented the first fee agreement in his reply brief, where he admits he "knew that he was going to have to come up with a trial fee [after pretrial motions]." (Reply to Resp. to Mot. for Summ. J. 2.) Wade's real objection is that Gaither overcharged. But that has no bearing on whether the letters are fraudulent. In sum, Wade does not—and cannot—argue that the letters, as written, are false.

Wade's allegations with respect to the third letter fail for similar reasons. Wade argues that the third letter, which proposed a third fee agreement that would have governed Gaither's representation on appeal, was "false" because "Plaintiff had already overpaid Defendant approximately $150,000 during the course of pre- and post-trial." (Am. Compl. 18.) The letter is short and does no more than propose a third fee agreement to cover appellate work.[6] It also accurately reflects the parties' prior written agreement that the "trial fee does not include any interlocutory appeal or any appeal. The representation continues only through sentencing."

---

[6] "Enclosed please find a proposed agreement concerning attorney fees. Under the Agreement the $27,500 will be placed in two trust accounts and subject to bi-weekly billings against the retainer. If you have any questions please give me a call. Also attached is a statement as to outstanding costs. Please pay me by July 9, 2005." (Def.'s Mem. in Supp. Ex. 45.)

6

(Second Fee Agreement, Def.'s Mem. in Supp. Ex. 22.) Wade's assertion that Gaither could not possibly have earned his prior payments is unsupported by any evidence and, in any event, is irrelevant to whether the letter contained any misrepresentation or falsity.

Finally, Wade insists that the fourth mailing—transmission of the billing statements originally sent to the Utah State Bar—is fraudulent because it was "designed to lull Plaintiff into believing that all of the money extorted was justifiable." (Am. Compl. 20 ¶ 32.) To support his argument, Wade cites *United States v. Lane*, 474 U.S. 438, 451-52 (1986), which stands for the general proposition that mailings after completion of the fraudulent scheme are still mail fraud if they "were designed to lull the victims into a false sense of security, postpone their ultimate complaint to the authorities, and therefore make the apprehension of the defendants less likely than if no mailings had taken place." *Id.* (quoting *United States v. Maze*, 414 U.S. 395, 403 (1974)).

There are two problems with this argument. First, both *Lane* and *Maze* dealt with mailings designed to "lull" a victim and prevent detection of prior mail fraud; for the reasons laid out above, there were no fraudulent mailings to cover up. Second, even if the *Lane* rule applies to Wade's alleged scheme of extortion, the mailing could only "lull" Wade if it were false. Wade, however, makes no allegation—and provides no evidence to suggest—that the statements themselves are false. Indeed, it is difficult to see how he could: Wade's other claims of fraud assume the statements are true.

In sum, even if Wade is correct that Gaither collected for work he did not perform, Gaither met his burden of demonstrating that there is no material dispute as to whether the letters contain a misrepresentation or falsity and Wade has failed to go beyond the pleadings to

designate specific facts showing a genuine issue for trial. Gaither's sloppy billing practices notwithstanding, no reasonable trier of fact could find for Wade on the issue of mail fraud.

### B. Extortion

Summary judgment on Wade's extortion claims is inappropriate, given the lack of evidence in the record and the parties' focus on the reasonableness of Wade's alleged fear of remaining in jail without representation (which is a quintessential jury question and should not have been argued here). Gaither is nevertheless entitled to summary judgment on the RICO claim. Even if Wade's extortion claims are presumed true, he fails to show a continuing pattern of racketeering activity.

### C. Continuing Pattern of Racketeering Activity

"To prove a pattern of racketeering activity a plaintiff . . . must show that the racketeering predicates are related, *and* that they amount to or pose a threat of continued criminal activity." *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 239 (1989). The phrase "continued criminal activity" can refer either to "a closed period of repeated conduct" or to "past conduct that by its nature projects into the future with a threat of repetition." *Id.* at 241. This case involves the former— a closed period of repeated conduct, or "closed-ended continuity."[7]

A plaintiff alleging a closed pattern of racketeering activity must show "a series of related predicates extending over a substantial period of time." *Id.*; *Resolution Trust*, 998 F.2d at 1543. Two factors are especially relevant to the determination of whether closed-ended continuity exists. The first is the duration of the predicate actions; continuity is "centrally a temporal

---

[7] Wade's argument in his complaint that the alleged criminal conduct might also be open-ended continuity is incorrect. Continuity is measured at the time the suit is filed. *Resolution Trust Corp. v. Stone*, 998 F.2d 1534, 1545 (10th Cir. 1993). Wade filed his complaint in 2008, well after he fired Gaither and the 2007 letter Wade alleges is the end of the racketeering conduct.

8

concept." *Resolution Trust*, 998 F.2d at 1543 (quoting *H.J. Inc.*, 492 U.S. at 242). The second is the extensiveness of the RICO scheme. *Id.* Extensiveness of the scheme is critical because "Rico is not aimed at the isolated offender," *id.* (citing *Sedima S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 n. 14 (1985)), and is meant to apply primarily to ongoing criminal enterprises. *H.J. Inc.*, 492 U.S. at 242.

### 1. Duration of the Alleged Racketeering

Though there is no temporal threshold across which racketeering conduct becomes continuous, the RICO statutes apply only to "activities that amount to or threaten long-term criminal activity." *Bixler v. Foster*, 596 F.3d 751, 761 (10th Cir. 2010) (quoting *H.J. Inc.*, 492 U.S. at 243 n. 4). Predicate acts spanning "a few weeks or months and threatening no future criminal conduct" are not considered continuous. *Id.*

Here, because Wade's mail fraud claims cannot survive summary judgment, his RICO claim rests entirely on the alleged extortion. According to Wade's affidavit, Gaither coerced him into making seven payments between July 9 and November 24, 2004. Thus, Wade alleges a closed period of *actual* extortion lasting only five months. Five months of criminal activity is not continuous within the meaning of the RICO statutes.

Wade nevertheless argues that closed-ended continuity exists because the July, 2005 letter attempted to extort him, thus extending the period of criminal activity to one year. The Court disagrees. There is no evidence in the record to support that the letter, which proposed a third fee agreement for representation on appeal, contained a threat of withdrawal or confirmed an earlier threat. Beyond Wade's conclusory allegations, the most the record reveals is that the parties second fee agreement, by its terms, did not cover any appellate work and that Gaither offered to

represent Wade on appeal pursuant to a third fee agreement. It is difficult to imagine how Gaither's offer to renew representation that had already ended could be considered attempted extortion.

### 2. *Extensiveness of the Alleged Scheme*

Even if Wade's alleged scheme could be said to span a "substantial time," the rest of the continuity factors cut firmly against him. When evaluating the extent of the scheme, courts look to a variety of factors: (1) the number of ongoing schemes, (2) the number of victims, (3) the complexity of the scheme, and (4) the variety of racketeering acts. *Resolution Trust*, 998 F.2d at 1543-44. The goal is reach a "natural and commonsense result." *Id.* (citation and quotation omitted).

Common sense dictates that Gaither's actions did not violate the RICO statute. Even if Wade's allegations of extortion are true, Gaither's conduct amounts only to one scheme, implicated only one victim, was simple in the extreme, and employed only one racketeering activity. This case is not the type of case Congress envisioned would arise in federal court when it passed the RICO statutes, and is properly dismissed on summary judgment. *See, e.g., Hall v. Witteman*, 584 F.3d 859, 867-68 (10th Cir. 2009) (affirming dismissal because conduct was "directed at only one individual . . . with no potential to extend to other persons or entities"); *Duran v. Carris*, 238 F.3d 1268, 1271 (10th Cir. 2001) (finding four acts and an unfulfilled threat of future conduct an insufficient, single scheme to accomplish a discrete goal without the potential to extend to others); *Boone v. Carlsbad Bancorporation, Inc.*, 972 F.2d 1545, 1555-56 (10th Cir. 1992) (dismissing claim because schemes and episodes spanning twenty-three months

were no more than single scheme to accomplish a discrete goal directed against a finite group of individuals).

*II. State Law Claims – Utah Pattern of Unlawful Activity Act and Common Law Fraud*

In addition to his RICO claim, Wade alleged two violations of state law—violation of Utah's Pattern of Unlawful Activity Act, U.C.A. §§ 76-10-1601, *et seq.*, and common law fraud. Rather than address the merits of these claims, the Court dismisses them without prejudice.

In any civil action in which a federal court has original jurisdiction over a particular claim, the court has the discretion to exercise supplemental jurisdiction over all state claims "so related" to the federal claim that they "form part of the same case or controversy." 28 U.S.C. § 1367(a). A claim is "so related" where, as here, the claims arise from the same nucleus of operative fact. *See United Mine Workers of America v. Gibbs*, 383 U.S. 715, 725 (1966).

But when a district court "has dismissed all claims over which it had original jurisdiction," 28 U.S.C. § 1367(c)(3), it may decline to exercise supplemental jurisdiction over remaining state law claims, and that decision is "purely discretionary," *Carlsbad Technology, Inc. v. HIF Bio, Inc.*, 129 S. Ct. 1862, 1867 (2009).

This is a case that should not have been in federal court. Whatever claims Wade may have against Gaither—and he may have legitimate ones—arise under state law.

## Conclusion

Wade's real beef is that Gaither overcharged him. Even if that is true, it is not a violation of the federal RICO statues. No reasonable juror could examine the fee agreements and construe the letters as anything more than offers to renew representation that, by contract, would otherwise end. The letters might appear "false" to Wade in the sense that they legitimately propose an

11

arrangement Wade now feels was illegitimate, but the letters are not false withing the meaning of the common law. In his zeal to prove Gaither a cheat (and recover treble damages), Wade overlooked this distinction and brought a claim on which no reasonable jury could find in his favor.

THEREFORE, the Court FINDS that Defendant Randall Gaither is entitled to summary judgment as to Wade's claims civil RICO claims, brought under 18 U.S.C. § 161, *et seq*. The Court ORDERS that judgment be entered in Gaither's favor with respect to these claims.

The Court further FINDS that exercising supplemental jurisdiction over Wade's state law claims is inappropriate. The Court therefore FURTHER ORDERS that those claims be dismissed without prejudice. Wade may, if he so chooses, file them in Utah State Court.

DATED this ___12___ day of January, 2011.

UNITED STATES DISTRICT JUDGE